NEW YORK,
Nov. 1822.

The People
*vs.*
Catharine
Foot.

---

The People *vs.* Catharine Foot. *Disorderly House.*

THE prisoner was put to the bar for trial, charged with keeping a disorderly house. She plead not guilty.

*Maxwell, District Attorney,* called on her trial.

*Price, M'Euen,* and *John A. Graham,* Esquires, her counsel, appeared and objected to calling on the cause.

*Price* read an affidavit in the usual form, and sworn to by the prisoner, which affidavit stated, that she had a material witness, who was absent, and without whose testimony she could not go to trial, and that she expected to have the benefit of his testimony before the next term. He contended that this was the first term after the charge made and indictment found : that it had always been deemed

sufficient to offer an affidavit the same term the indictment was found of the absence of a material witness, and that the court had always granted the prayer of the prisoner: and that public opinion had been excited by publications in the newspapers against her, &c.

*John A. Graham* addressed the court in an elegant and flowery harangue of some length, in which he insisted upon the right of the prisoner to a postponement of the case to the next term, stating that she was totally unprepared for trial, that her counsel had not had time to consult with her in her defence; that if she was hurried to trial, thus unprepared, it would only be an *ex parte* trial: that she must be convicted, &c.

*Maxwell* replied that the case had been set down for trial this day : that it was the first time he understood the prisoner was not ready : that affidavits of this kind were easily made, and public justice often suffered by them; that the court had a discretion to allow them, or not, as they pleased; that this was a case that called for the exercise of that discretion ; he called upon the court for the exercise of their discretionary power to compel the prisoner to state the facts she expected to prove by the absent witness, or in the alternative to go on to trial, offering to admit as evidence any fact that she would state, in the affidavit, she expected him to prove; and concluded by saying, that if this case was adjourned to the next term public justice would be defeated ; that in the mean time the prisoner most probably would be bailed, and no trial at all ever had.

*Price* replied, that admitting what she expected to prove by her witnesses, would not place her in a situation on equality with the prosecution. That the benefit of the impression her witness would make before the jury, if in her favor, would be lost by not appearing before them : and

NEW-YORK, Nov. 1822.

The People vs. Catharine Foot.

concluded by pressing his motion for an adjournment to the next term.

*By the Court..*—" We know nothing of this case but " what has fallen from the counsel in their address to the " court. It appears that the prisoner was engaged in se- " ducing young girls to her house, for the purpose of " taking them to Savannah, and to keep a house of prosti- " tution there. This is an offence that calls for the inter- " position of a court of justice. We think the charge is a " very important one, and one that merits public example, " if satisfactorily proved. In ordinary cases, an affidavit " of the absence of a material witness has been deemed " sufficient in this court to put off the trial to the next term. " But cases may occur where the court will compel the " prisoner to show how his absent witness is material, by " stating in his affidavit what he expects to prove by him. " The court think this is a case of this kind : they consider " the offer of the prosecuting officer to be fair and liber- " al, to admit as true, the testimony sworn to be material. " If the prisoner does not choose to accept the offer made " by the District Attorney, the court will order the trial on."

The counsel for the prisoner not accepting the offer made, the cause was called on. A jury was called, and the ballots drawn out of the box, in the usual manner ; seven jurors from the panel took their seats, and the number twelve was made up by tales. Before they were sworn the District Attorney asked the counsel of the prisoner if he would consent to take the jury in the box, or have a new jury called ; they declined any further interference in the case. The jury were then sworn.

*Price* then rose, and requested the court to note, that the clerk had drawn the tickets out of the box unfolded, when the statute required they should be folded ; the clerk ad-

mitted they had been so drawn. The Court, in compliance with this request, made a memorandum, to found any exception upon the counsel might choose to make, and proceeded upon the trial.

*Maxwell* opened the case to the jury. He stated the prisoner was in the habit of inveigling young girls of tender years to her house, where they were seduced and ruined. That even places of public worship was waylaid in order to effect her diabolical purposes. He would show them that young girls of fourteen and fifteen years of age had been seduced by her arts to her house, and there lived in habits of prostitution, under her countenance and protection. He would show them that the anxious parents had been denied they were there, when it would be proved they were in the house. That this woman had contemplated and was training them for the purpose of taking them to Savannah, and was in the act of embarking them, in a vessel bound to that port, when arrested. He then called,

*Catherine Scarf*, who testified that she was sixteen years of age. She became acquainted with the prisoner about five weeks ago ; was returning from church, and was accosted by the prisoner at the corner of Grand-street and Broad-way. The prisoner invited her to her house— she went to her house, and staid about half an hour, and as she was coming away the prisoner strongly pressed her to call and see her again. She went in two or three days after, and was finally seduced in the prisoner's house, and agreed to go to Savannah.

*Frances Scarf* testified that she was fourteen years of age ; that she went to Mrs. Foote's with her sister ; they called two or three times there. Mrs. Foote wanted *small* girls to take to Savannah ; did not see any men the first day ; saw four young ladies. " Was you seduced in that

NEW-YORK,
Nov. 1822

house?" Would not answer. "Have you been told not to answer any question that would disgrace you?" "Yes."

*Catherine Fletcher* testified she was about fifteen years of age, and had lived four or five weeks with Mrs. Foote ; that her mother came after her, and was denied by the prisoner that she had been there : she was on the point of sailing with Mrs. Foote to Savannah when she was arrested.

*Justices Hopson and Hedden* both testified that the prisoner confessed to them that she kept a house of prostitution ; but denied the seduction of the young women in her house.

*The Court* observed to the jury, that the proof against her was full and satisfactory. She had herself confessed to Justices Hopson and Hedden, that she had kept a disorderly house. The jury found her guilty without leaving the box. Query of this verdict.